UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 18-111-DLB-CJS

BRIT UW LIMITED　　　　　　　　　　　　　　　　　　　　　　　　　PLAINTIFF
on behalf of Lloyd's Syndicate 2987

v.　　　　　　　　　MEMORANDUM OPINION AND ORDER

DENVER SMITH, et al.　　　　　　　　　　　　　　　　　　　　　DEFENDANTS

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Plaintiff Brit UW Limited ("Brit"), for and on behalf of Lloyd's Syndicate 2987, an insurance company, commenced this declaratory-judgment action against Defendants Denver Smith, Loretta Smith, Fat Boy's Dream LLC ("FBD"), Justin Foster, Eliminator Custom Boats Inc. ("Eliminator"), Brunswick Corporation ("Brunswick"), the Estate of Ronald Parker, Roger Lewis, and Carol Martin. (Doc. # 1). FBD is one of several defendants currently being sued in Mason County Circuit Court in connection with a fatal boating accident that occurred in Maysville, Kentucky. *See Lewis v. Foster*, Case No. 18-CI-40 (underlying state-court action). Brit seeks a determination that, pursuant to its insurance contract with FBD, it has no duty to defend or indemnify FBD against damages it may be liable for in the state-court lawsuit. (Doc. # 1). After Brit filed its Complaint seeking a declaratory judgment (Doc. # 1), the Court issued an order to show cause why the Court should take jurisdiction. (Doc. # 31). Both sides having submitted briefs, *see* (Docs. # 32, 35, 36, 37, and 38), and the time for filing of a response having expired, the matter is now ripe for the Court's review. For the reasons set forth below, the Court

1

**declines to exercise its jurisdiction** over Brit's declaratory-judgment suit.

I.     FACTUAL AND PROCEDURAL BACKGROUND

   A.     The State-Court Action

On August 19, 2017, Justin Foster was operating a speedboat on the Ohio River as part of a charity boating event sponsored by a local restaurant called Fat Boy's Dream ("FBD"). (Doc. # 1 ¶ 17). Foster lost control of the speedboat during the event, and he and his passenger, Ronald Parker, were ejected from the vessel. The speedboat then crashed into a nearby pontoon boat operated by Roger Lewis and Carol Martin. *Id.* ¶ 18. Parker died as a result of the accident, while Lewis suffered a serious leg injury, and Martin continues to suffer from Post-Traumatic Stress Disorder. *Id.* ¶¶ 18, 29.

Lewis and Martin—the owners of the pontoon boat—filed a tort action on February 7, 2018 in Mason County Circuit Court, bringing negligence claims against Foster and against Parker's estate for failure to properly maintain and operate Foster's speedboat. *Id.* ¶¶ 21, 26. They also brought negligence and products-liability claims against Eliminator, the designer of Foster's speedboat, and against Brunswick, the designer of the stern drives on Foster's speedboat. *Id.* ¶¶ 23, 24. Finally, Lewis and Martin sued FBD and its owners Denver and Loretta Smith, for allegedly failing to exercise ordinary care in planning and overseeing the boating event. *Id.* ¶ 27. Ronald Parker's estate then filed a crossclaim against FBD, also alleging negligence in sponsoring and planning the boating event. *Id.* ¶ 29. Defendant Eliminator removed the case to the Eastern District of Kentucky. *Lewis v. Foster*, No. 2:18-cv-60-DLB-CJS (E.D. Ky. 2018), ECF No. 1. Shortly thereafter, several parties moved to remand the case back to state court. *Lewis v. Foster*, No. 2:18-cv-60-DLB-CJS (E.D. Ky. 2018), ECF Nos. 9, 10, and 11. The Court

granted those motions on September 5, 2018 and remanded the case back to Mason County Circuit Court. *Lewis v. Foster*, No. 2:18-cv-60-DLB-CJS, 2018 WL 4224445 (E.D. Ky. Sept. 5, 2018).

B.  **This Action**

Brit issued a general liability policy to FBD, which was in effect from June 28, 2017 until June 28, 2018. (Doc. # 1 ¶ 30). Pursuant to this policy, Brit is defending FBD in the state-court action under a reservation of rights that includes the right to deny that it owes FBD "any defense or indemnity obligations with respect to the claims set forth in the [state-court action] or under the Policy." *Id.* ¶ 42.

Brit, which is not a party to the state-court action, filed the instant declaratory-judgment action on June 29, 2018, naming as Defendants all parties who might have an interest in the outcome of the insurance-coverage issue, including the insureds (Denver and Loretta Smith d/b/a Fat Boy's Dream), the tort plaintiffs (Roger Lewis and Carol Martin), and the tort defendants (Justin Foster, Eliminator, Brunswick, and the Estate of Ronald Parker). (Doc. # 1). Brit's Complaint alleges that it has no duty to defend or indemnify Denver and Loretta Smith and/or FBD in connection with any of the claims stemming from the August 19, 2017 boating accident. *Id.* ¶¶ 44-48. Specifically, Brit alleges that the policy it issued to FBD applies only to risks associated with its restaurant, liquor sales, and gasoline stations, none of which relate to the August 19, 2017 boating event. *Id.* ¶ 45. Furthermore, Brit claims that even if coverage for the boating event were available under the policy, certain exclusions apply which eliminate Brit's coverage obligation. Brit relies on the exclusions relating to "Athletics or Sports Participants" as well as bodily injury or property damage "arising out of the ownership, maintenance, use

3

or entrustment to others of any watercraft owned or operated by or rented or loaned to [FBD]." *Id.* ¶ 35.

Brit requests that the Court declare it not liable under the policy issued to FBD for any judgment entered in the state-court action and that it is "not obligated in any manner to defend or indemnify Denver & Loretta Smith d/b/a Fat Boy's Dream LLC" in the state-court action. (Doc. # 1 at 11).

Defendants Roger Lewis and Carol Martin (Plaintiffs in the state-court action) filed an Answer and Counterclaim, asserting that Brit's policy issued to FBD does in fact cover damages stemming from the August 19, 2017 boating accident and that no exclusions apply. (Doc. # 9). The Estate of Ronald Parker and Brunswick have also filed Answers. (Docs. # 10 and 11). The Court subsequently ordered briefing on the question of whether it should exercise jurisdiction to hear the declaratory-judgment action. (Doc. # 31). The Court has received responses from the Estate of Ronald Parker, Roger Lewis and Carol Martin, FBD, and Brit. (Docs. # 32, 35, 36, 37, and 38). As alluded to in its show-cause Order (Doc. # 31 at 1), the Court has diversity jurisdiction over this action.[1]

---

[1] Brit takes this to mean that the Court has no choice but to decide its declaratory-judgment suit, arguing that "declining to exercise jurisdiction in an insurance-coverage dispute via the federal Declaratory Judgment Act while jurisdiction separately exists under 28 U.S.C. § 1332 is inappropriate and <u>not</u> in any manner dictated by *Grand Trunk* and its progeny." (Doc. # 38 at 2) (emphasis in original). Brit is mistaken. It is well-settled that the Declaratory Judgment Act does not create an independent basis for federal subject-matter jurisdiction; rather, "[t]he Act merely provides courts with discretion to fashion a remedy." *Heydon v. MediaOne of Se. Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003). Consequently, a party seeking declaratory relief pursuant to 28 U.S.C. § 2201 "must establish either diversity or federal question jurisdiction." *Woodman of the World/Omaha Woodmen Life Ins. Soc'y v. Scarbro*, 129 F. App'x 194, 195 (6th Cir. 2005) (per curiam). The fact that diversity jurisdiction exists, however, does not force the Court's hand, as "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, *even when the suit otherwise satisfies subject matter jurisdictional prerequisites*." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (emphasis added).

4

## II. ANALYSIS

### A. Standard of Review

The Declaratory Judgment Act provides, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a)(emphasis added). In situations where there is a simultaneous state-court action between the insured and an alleged tort victim, the federal court is not obliged to entertain an action under the Declaratory Judgment Act. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494-95 (1942); *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004). Consequently, the Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *accord Western World Ins. Co. v. Hoey*, 773 F.3d 755, 758 (6th Cir. 2014).

To guide the exercise of this discretion, the Sixth Circuit has identified five factors for district courts to consider. *Hoey*, 773 F.3d at 759. These factors, first introduced in the case *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984), are as follows:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata";

5

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; [which is determined by asking]

    a. whether the underlying factual issues are important to an informed resolution of the case;

    b. whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

    c. whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action; and

(5) whether there is an alternative remedy which is better or more effective.

*Hoey*, 773 F.3d at 759 (alteration in original) (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d at 554, 560 (6th Cir. 2008)).

The *Grand Trunk* factors embody three main principles—efficiency, fairness and federalism. *Id.* The Sixth Circuit "ha[s] never assigned weights to the *Grand Trunk* factors when considered in the abstract" because they are not always equal. *Id.* Thus, for instance, "[a] relatively efficient declaratory judgment (factors 1, 2, and 5) could very well be inappropriate if hearing the case would be unfair (factor 3) or would offend the bundle of principles we generally label 'federalism' (factor 4)." *Id.* While the relative weight of these underlying principles will vary depending on the facts of each case, "[t]he essential question is always whether a district court has taken a good look at the issue and engaged in a reasoned analysis of whether issuing a declaration would be useful and fair." *Id.*

## B. Factor One: Settlement of the Controversy

The first factor concerns whether a declaratory judgment would settle the controversy. Two conflicting lines of precedent have developed in the Sixth Circuit on the

meaning of this first factor. *Flowers*, 513 F.3d at 555. One line of cases weighs the first factor against exercising federal jurisdiction when the declaratory judgment would not resolve the underlying controversy between the parties in state court. *See id.* at 555 (collecting cases). A second line of cases, however, weighs this factor in favor of exercising jurisdiction so long as the declaratory judgment would settle the coverage controversy between the insurer and the insured. *See id.* (collecting cases).

The Court in *Flowers* found these two competing lines of cases to be distinguishable on their facts. *Flowers*, 513 F.3d at 555. "Primarily, the key factual differences concern whether or not the same parties are involved in the underlying state-court action, and whether coverage turns on either a straightforward legal question or a factual question that is involved in the state-court litigation." *Am Nat'l Prop. & Cas. Co. v. Wilson*, No. 18-cv-116-DLB-CJS, 2019 WL 1876797, at *3 (E.D. Ky. Apr. 26, 2019).

To illustrate, in *Bituminous Casualty Corp. v. J & L Lumber Co., Inc.*, the coverage determination turned on whether the injured party was an employee of the insured at the time of his injury, a "fact-based" and "very close" question of state law that was also being considered in the state-court proceeding. 373 F.3d 807, 813 (6th Cir. 2004). In addition, the plaintiff in the state-court action "was not made a party to the declaratory judgment action" and thus "any judgment in the federal court would not be binding as to him and could not be res judicata in the tort action." *Id.* at 814. Given these facts, the court found that "a declaration of insurance coverage would not resolve the controversy." *Id.*

The Sixth Circuit ruled similarly in *Allstate Insurance Co. v. Mercier*. In that case, the estate of an individual killed by a drunk driver brought a wrongful-death action in state court against Dawn Mercier and Adam Mair, who allegedly provided alcohol to the drunk

7

driver. 913 F.2d 273, 275 (6th Cir. 1990). Allstate Insurance Company, which had issued a "family liability" policy to Mercier and Mair, went to federal court for a declaration that there was no coverage under the policy for any judgment arising from the tort suit. *Id.* at 275-76. The district court allowed the declaratory-judgment action and granted summary judgment for the insurance company, finding that Mercier and Mair's actions fell under an exclusion in the policy for injury "arising out of the ownership, maintenance, use, loading or unloading" of a motor vehicle. *Id.* at 278. The Sixth Circuit reversed, noting that whether this exclusion applied hinged on whether Mair or Mercier were the owners or had possession of the automobile used in the accident. *Id.* These facts, the Sixth Circuit concluded, "would necessarily be developed at a trial of the tort action." *Id.*

In contrast, the Sixth Circuit in *Northland Insurance Co. v. Stewart Title Guarantee Co.* concluded that the first factor supported the exercise of federal jurisdiction. 327 F.3d 448, 454 (6th Cir. 2003). The insurance company in *Northland* sought a declaration of no duty to indemnify the insured title company against a title insurance underwriter's state-court claims for embezzlement, conversion, and breach of contract. *Id.* at 449. The court found that, as a matter of law, the insurance policy at issue excluded coverage for the damages alleged in the state-court complaint. *Id.* at 458. Consequently, unlike in *Mercier* or *Bituminous*, "the district court was fully capable of determining the nature of the coverage provided by the contract of insurance, and this determination did not have to await the resolution of factual issues in the state action." *Id.* at 454. The court in *Northland* also noted that the insurer "was not a party to the state court action and neither the scope of the insurance coverage nor the obligation to defend was before the state court." *Id.*

Likewise, in *Flowers* itself, the Sixth Circuit found that the declaratory judgment would settle the controversy where the insurance-coverage issue "involved a legal, not factual, dispute." 513 F.3d at 556. The insureds in *Flowers* were a mental-health facility and one of its therapists. *Id.* at 550. Both were sued in state court by one of the therapist's patients, who alleged she suffered emotional distress after having a sexual relationship with the therapist. *Id.* The facility's insurer filed a declaratory-judgment action in federal court, arguing that it had no duty to extend coverage to the therapist because the therapist's conduct was outside the scope of his employment. *Id.* Consequently, the sole question before the district court was "whether a therapist acts outside of the scope of his employment when he engages in sexual activities with his clients," which, "unlike the controversy in *Bituminous*, did not require the district court to inquire into matters being developed through state court discovery." *Id.* at 556, 561. Moreover, as was the case in *Northland*, the insurer in *Flowers* was not a party to the state-court lawsuit; thus, the coverage issue "was not and could not be considered in the state court action." *Id.* at 556.

The case at bar is mixed when it comes to this first factor. On the one hand, unlike in *Bituminous*, the insurer in this case has named the state-court plaintiffs, Roger Lewis and Carol Martin, as parties to the declaratory-judgment action. (Doc. # 1). As such, the concern expressed in *Bituminous* that "any judgment in the federal court would not be binding as to [the state-court plaintiff]" is not present here. *Bituminous*, 373 F.3d at 814. Moreover, this case is akin to *Northland* in that the insurer is not a party to the state-court action "and neither the scope of insurance coverage nor the obligation to defend [is] before the state court." *Northland*, 327 F.3d at 454.

9

On the other hand, Brit's declaratory-judgment suit involves several factual issues directly related to the underlying tort suits pending in the Mason County Circuit Court. For example, in arguing that it is not obligated to cover losses stemming from the boating event, Brit invokes the provision in its policy with FBD that excludes from coverage "'bodily injury' to any person while practicing for or participating in any sports or athletic contest or exhibition that [FBD] sponsor[s]." (Doc. # 1 ¶ 34). Whether this exclusion applies is a quintessential "fact-based question of state law." *Flowers*, 513 F.3d at 555. Although Kentucky courts have yet to consider the boundaries of the "Athletic or Sports Participant" exclusion, other states have used a four-part test to determine when the exclusion applies, which asks (1) whether the event in which the person injured was a contest or exhibition; (2) whether the contest or exhibition was of an athletic or sports nature; (3) whether the contest or exhibition was sponsored by the named insured; and (4) whether the injured person was practicing for or participating in the contest or exhibition at the time of the injury. *See Leach v. Scottsdale Indem. Co.*, 323 P.3d 337, 344 (Or. Ct. App. 2014) (collecting cases).

Unlike the declaratory-judgment action in *Flowers*, which could be resolved as a matter of law, determining the answers to the above questions requires factual inquiries into the nature of the boating event, the extent of FBD's involvement in the event, and the specific activities of the participants. Moreover, while there is little information in the record about the state-court action, it is easy to see how the state court would conduct similar factual inquiries in determining whether FBD was negligent in overseeing the boating event. In its brief, Ronald Parker's estate argues that "[f]actual determinations such as Fat Boy's on-site sponsorship activities, alcohol consumption by event

participants while at Fat Boy's, and pre-event safety measures conducted at Fat Boy's will need to be addressed in the federal declaratory action." (Doc. # 36-1 at 2). Brit's brief (Doc. # 38), filed two weeks after the Estate's brief, does not contest this argument. The Court agrees with Defendants that exercising jurisdiction in this case would "require the district court to inquire into matters being developed through state court discovery." *Flowers*, 513 F.3d at 556.

In summary, although arguably a close call, the Court finds that resolving the declaratory-judgment action will not settle the controversy. While Brit is not named in the tort action and all parties in the state-court action are parties to the declaratory-judgment action, "the Court finds it determinative that coverage turns in part on a factual question that is involved in the state-court litigation." *Wilson*, 2019 WL 1876797, at *5. This conclusion is in accordance with the Court's previous ruling in *Auto-Owners Insurance Co. v. Egnew*, 152 F. Supp. 3d 868 (E.D. Ky. 2016). In that case, like here, the declaratory-judgment plaintiff was not a party to the state-court lawsuit and both the insureds and the state-court plaintiffs were named in the declaratory-judgment action. *Id.* at 871, 874-75. Nevertheless, the Court held that resolving the coverage question required deciding fact-based questions of state law and that "there [was] a strong possibility that many of these same factual questions will also be addressed by [the state court]." *Id.* at 876. As a result, the Court reasoned that "a declaratory judgment in this matter would not settle the controversy." *Id.* Likewise in this case, the Court finds that, on balance, the first *Grand Trunk* factor weighs slightly against exercising jurisdiction.

### C. Factor Two: Clarification of the Legal Relations at Issue

The second *Grand Trunk* factor examines whether the declaratory judgment will clarify the legal relations at issue. *Flowers*, 513 F.3d at 556. As with the first factor, there is a split in Sixth Circuit case law "concerning whether the district court's decision must only clarify the legal relations presented in the declaratory judgment action or whether it must also clarify the legal relations in the underlying state action." *Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, 759 F. App'x 431, 438 (6th Cir. 2018) (quoting *Flowers*, 513 F.3d at 557). In *Massachusetts Bay*, the Sixth Circuit observed that "[i]n general, courts tend to consider this factor with the first factor, reaching the same conclusion for both." *Id.*

The *Massachusetts Bay* court also noted, however, that a minority of Sixth Circuit precedents "have treated [the second factor] as distinct from the first factor, reasoning that the first factor examines whether the declaratory action will resolve the coverage dispute as well as the underlying action, whereas [the second factor] is focused just on the insurance-coverage dispute." *Id.* (citing *Mercier*, 913 F.2d at 279). A number of courts in the Eastern District of Kentucky have also adopted this view. One such court found that "the federal declaratory judgment action would not settle the ultimate controversy—factor one—but it would nevertheless clarify the legal relations at issue—factor two." *Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am.*, 565 F. Supp. 2d 779, 788 (E.D. Ky. 2008) (Thapar, J.); *see also Nationwide Mut. Fire Ins. Co. v. Hatton*, 357 F. Supp. 3d 598, 612 (E.D. Ky. 2019) (adopting the reasoning in *Grange*); *Egnew*, 152 F. Supp. 3d at 876-77 & n.10 (same).

While resolution of Brit's declaratory-judgment suit would not settle the controversy in state court, it would clarify the legal relationship between Brit and the state tort litigants; as parties to the declaratory-judgment action, the latter would be bound by the federal court's coverage determination. Additionally, as mentioned above, Brit is not a party to the state-court litigation and thus "neither the scope of insurance coverage nor the obligation to defend [is] before the state court." *Northland*, 327 F.3d at 454. Consequently, "there is little or no risk that a ruling on this precise issue would be duplicated or contradicted by the state court." *Egnew*, 152 F. Supp. 3d at 877; *cf. Grand Trunk*, 746 F.2d at 326 (holding that a declaratory judgment would not serve to clarify the legal relations in issue when the state court had already ruled on the insurer's indemnity claim). Recognizing that "there appears to be little risk that a ruling on [the insurance coverage] issue would be duplicated in the state court action," Defendants Lewis and Martin concede that a declaratory judgment "would clarify the relationship between Brit and the insured defendants." (Doc. # 36-1 at 3). The Court agrees and finds that the second *Grand Trunk* factor favors the exercise of jurisdiction.

### D. Factor Three: Improper Motive

The third *Grand Trunk* factor concerns whether "the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata.'" *Mass. Bay*, 759 F. App'x at 438 (quoting *Grand Trunk*, 746 F.2d at 326). The term "procedural fencing" "has come to encompass a range of tactics that courts regard as unfair or unseemly." *Hoey*, 773 F.3d at 761. Primarily, however, "[t]he third factor is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a "natural plaintiff" and who seem to have

13

done so for the purpose of acquiring a favorable forum.'" *Flowers*, 513 F.3d at 558 (quoting *Amsouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)). Courts, however, "are reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Id.*

Here, the declaratory-judgment suit was filed on June 29, 2018, more than four months after the underlying tort suit was filed in state court. (Doc. # 1 ¶ 17). Accordingly, Brit is presumed not to have brought this action with an improper motive. *See Bituminous*, 373 F.3d at 814. Even so, the Sixth Circuit has held that a finding of no improper motive under the third factor "should be afforded little weight" and simply means that this factor is neutral. *See Mass. Bay*, 759 F. App'x at 439 (citing *Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 272 (6th Cir. 2007)). Thus, the Court's finding that Brit did not engage in unfair tactics does little to affect its overall conclusion on whether exercising jurisdiction is proper.

### E. Factor Four: Increased Friction Between Federal and State Courts

The fourth *Grand Trunk* factor seeks to determine "whether accepting jurisdiction would increase friction between federal and state courts." *Flowers*, 513 F.3d at 559. Although "the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction," "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in 'gratuitous interference,' if it permitted the federal declaratory action to proceed." *Id.* at 559 (internal quotation marks and brackets omitted). To guide this inquiry, the Court applies the following three subfactors:

    (1)    whether the underlying factual issues are important to an informed resolution of the case;

(2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Id.* at 560 (quoting *Bituminous*, 373 F.3d at 814-15).

In evaluating this first subfactor, the Court considers "whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Id.* The Sixth Circuit has observed that conflicts over the scope of insurance coverage "can sometimes be resolved as a matter of law and do not require factual findings by a state court." *Id.* (citing *Northland*, 327 F.3d at 454; *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987)). In these cases, "the liability issues being determined in the state court proceeding may well be legally, if not factually, distinct from the issues of policy interpretation which are central to the federal declaratory judgment action." *Id.* (quoting *Green*, 825 F.2d at 1067). When, in contrast, resolving the coverage question requires the federal court and state court to make similar factual findings, "the exercise of jurisdiction would be inappropriate." *Id.*

As discussed above in reference to the first *Grand Trunk* factor, Brit's declaratory-judgment action cannot be resolved as a matter of law and thus the first subfactor weighs against exercising jurisdiction. The Court has already explained that it would have to make factual findings regarding the nature of the boating event in order to determine if the insurance policy's "Athletic or Sports Participant" exclusion applies. *See supra* Part II.B. Brit makes two additional arguments for why it has no duty to indemnify FBD—neither of which can be ruled on as a matter of law. First, Brit alleges that the policy it

issued to FBD applies only to risks associated with its restaurant, liquor sales, and gasoline stations, none of which relate to the August 19, 2017 boating event. (Doc. # 1 ¶ 45). As Defendants assert, deciding this issue likely requires factfinding as to whether any of the boaters involved in the accident consumed alcohol at FBD's restaurant. (Docs. # 32 at 2 and 37 at 2). Second, Brit argues that its policy with FBD does not cover losses "arising out of the ownership, maintenance, use or entrustment to others of any watercraft owned or operated by or rented or loaned to [FBD]." Deciding whether this exclusion applies would involve determining if any of the vessels involved in the accident were owned or operated by FBD. Given the nature of the claims involved in the Mason Circuit Court litigation, including negligence claims against FBD, Foster, and Parker's Estate, it is apparent that "the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Flowers*, 513 F.3d at 560. Therefore, the first subfactor weighs against hearing Brit's declaratory judgment.

"The second sub-factor focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. "In general, states are in a better position to resolve insurance issues governed by state law." *Mass. Bay*, 759 F. App'x at 440. Furthermore, this subfactor weighs more heavily in favor of declining jurisdiction when the declaratory-judgment action involves novel issues of state law. *Flowers*, 513 F.3d at 560. However, this consideration has less force in situations where the insurer is not a party to the state-court action and the insurance-coverage issue is not before the state court. *Id.*

In this case, Brit is not a party in the underlying tort litigation and insurance coverage is not an issue in that action. Nevertheless, this subfactor weighs against

16

exercising jurisdiction because "resolution of the insurance controversy in this case requires a ruling on previously undetermined questions of state law." *Bituminous*, 373 F.3d at 815; *see Egnew*, 152 F. Supp. 3d at 879 (finding the second subfactor to weigh against exercising jurisdiction despite the fact that the insurer was not a party to the state-court action because "novel questions of state law are presented"). As mentioned, despite other state courts having weighed in on the meaning of the "Athletic or Sports Participant" exclusion at issue in Brit's insurance-coverage dispute with FBD, Kentucky courts have yet to do so.[2] "For the federal courts to preempt the right of the state court to rule on a previously undetermined question of state law, more must be present than the desire of the insurance company to avoid the possibility of an unfavorable ruling in state court by convincing the federal court to rule first." *Omaha Prop. & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 448 (6th Cir. 1991). Accordingly, the second subfactor weighs against entertaining Brit's declaratory-judgment suit.

The third subfactor focuses on "whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. The Sixth Circuit has often recognized that "issues of insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve." *Flowers*, 513 F.3d at 561 (quoting *Travelers*, 495 F.3d at 273); *accord Mass. Bay*, 759 F. App'x at 440 (collecting cases).

---

[2]     One unpublished decision in the Kentucky Court of Appeals has discussed the meaning of a "sponsor" of a sports or athletic contest. *See Johnson v. Capitol Specialty Ins. Corp.,* No. 2017-CA-171-MR, 2018 Ky. App. Unpub. LEXIS 447, at *14-18 (Ky. Ct. App. June 22, 2018). The *Johnson* court did not, however, opine on what constitutes a "sports or athletic contest," one of the disputed issues in this case. *See* (Doc. # 35 at 3). Thus, "it appears that the issue has not been squarely resolved under Kentucky law." *Travelers*, 495 F.3d at 272.

As mentioned already, Brit's declaratory-judgment suit was brought pursuant to the Court's diversity jurisdiction, and, accordingly, all substantive issues are governed by state law. Moreover, adjudicating Brit's declaratory judgment would involve deciding unsettled questions of state insurance law, which are also intertwined with factual issues likely to be considered by the state court in the underlying tort action. *See supra* Part II.B. As such, the scope of coverage and applicability of exclusions in Brit's insurance contract with FBD are more appropriately considered in state court. *Mass. Bay*, 759 F. App'x at 440-41; *Bituminous*, 373 F.3d at 816. Thus, the third subfactor also weighs against exercising jurisdiction.

As each of the subfactors point towards Kentucky state court as the more appropriate forum, the fourth *Grand Trunk* factor weighs heavily against exercising jurisdiction under § 2201.

### F. Factor Five: Availability of an Alternative Remedy

The fifth factor the Court must consider is "whether there is an alternative remedy which is better or more effective." *Mass. Bay*, 759 F. App'x at 441 (quoting *Grand Trunk*, 746 F.2d at 326). The Court's inquiry on this factor "must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Flowers*, 513 F.3d at 562. As Brit acknowledges, it is free to seek a declaratory judgment in Kentucky state court pursuant to Ky. Rev. Stat. § 418.040 or to intervene in the underlying tort litigation and file an indemnity action at the conclusion of the case. *See* (Doc. # 38 at 5). Therefore, Brit's statement that "the other parties to this suit seem to want to permanently deprive Brit of a forum" is puzzling. *Id.*

18

In any event, a declaratory judgment in the state court is preferable to a federal-court decision, given that this case involves undecided questions of state law that hinge on facts to be determined in the state tort litigation. See *Flowers*, 513 F.3d at 562; *Bituminous*, 373 F.3d at 816; *Egnew*, 152 F. Supp. 3d at 880. Furthermore, the Sixth Circuit has "question[ed] the need for declaratory judgments in federal courts when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner." *Bituminous*, 373 F.3d at 816-17 (internal ellipsis omitted) (quoting *Am. Home Assur. Co. v. Evans*, 791 F.2d 61, 63 (6th Cir. 1986)). Brit has not demonstrated how a declaratory judgment in state court would not adequately protect its interests. Thus, the fifth factor also counsels against entertaining the declaratory-judgment action in federal court.

### G. Balancing the Factors

The Sixth Circuit has "never indicated how these *Grand Trunk* factors should be balanced." *Mass. Bay*, 759 F. App'x at 442 (quoting *Flowers*, 513 F.3d at 563). This is because "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on the facts of the case." *Hoey*, 773 F.3d at 759. In the instant case, the first, fourth, and fifth factors weigh against exercising jurisdiction, while the second factor weighs in favor of exercising jurisdiction. The third factor is neutral. Taking into account the "underlying considerations of efficiency, fairness, and federalism," the Court finds that exercising jurisdiction in this matter would be improper.

III. **CONCLUSION**

For the reasons stated herein, **IT IS ORDERED** as follows:

(1) The Court **DECLINES TO EXERCISE JURISDICTION** pursuant to 28 U.S.C. § 2201; and

(2) This matter be, and is, hereby **DISMISSED** and **STRICKEN** from the Court's active docket.

This 30th day of July, 2019.



Signed By:
*David L. Bunning*
United States District Judge

J:\DATA\Opinions\Covington\2018\18-111 MOO Declining Jurisdiction.docx